ORIGINAL

1 Koren Barrett, appearing Pro Se

2 505 Larkspur Ave

3 Corona Del Mar CA 92625

4 Phone (949) 689-8979

5 Email: korenlynn@hotmail.com

FILED
2010
APR 16 2010
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY _____ Deputy Clerk

6 UNITED STATES BANKRUPTCY COURT

7 FOR THE CENTRAL DISTRICT OF CALIFORNIA

8 SANTA ANA DIVISION

| | |
|---|---|
| 9 KOREN BARRETT, ND, Plaintiff | CHAPTER 7 BANKRUPTCY |
| 10 | CASE 8:09-bk-18916-ES |
| 11 v. | |
| 12 | ADVERSARY PROCEEDING |
| 13 KENT THOMAS ZIMMER and | CASE NO.: 8:09-01774-ES |
| 14 STACIE LOUISE ZIMMER, Defendants | |
| 15 | CASE NO. 8:09-01774-ES and |
| 16 | RELATED Actions, Jointly |
| 17 | Administered |
| 18 | |
| 19 | AMENDED VERIFIED COMPLAINT FOR |
| 20 | DAMAGES; FRAUDULENT |
| 21 | |
| 22 | MISREPRESENTATION |

23     Koren Barrett, appearing *Pro Se*, (hereinafter "Plaintiff") files this adversary complaint

24 against the Defendants Kent Thomas Zimmer and Stacie Louise Zimmer and alleges the

25 following:

Adversarial Complaint – Page 1

FACTS

1. Beginning November 2008 Koren Barrett ("plaintiff") occupied and rented a medical office at 1831 Orange Ave suite A/B leased and operated by Kent and Stacie Zimmer ("Defendants"). Plaintiff is a doctor of naturopathic medicine. Defendants had a holistic health care center from which Plaintiff leased space for her private practice. Defendants and Plaintiff were not business partners, nor were they in an employment relationship.

2. Defendants and Plaintiff had a verbal agreement (hereinafter the "Agreement") relating to rent and utilities as described herein:

- In exchange for Plaintiff leasing a patient care room and for front desk support for scheduling and assisting Plaintiff's patients, and for collecting patient remittances, Plaintiff would pay defendants $1,600 monthly, plus 15% of all patient fees collected above $1,600. Defendants were to collect patient remittances from Plaintiff's patients on her behalf then remit that money to Plaintiff, minus defendant's fees ($1,600, plus 15% of what was collected in excess of $1,600) as described above. Money would be collected then remitted to the Plaintiff on the last day of the month and again on the 15th of the month.

- Defendants also agreed to pay to Plaintiff a percentage of supplement sales for supplements sold at the health center.

- At no time did Plaintiff ever verbally or in writing authorize Defendants to open any accounts in her name with any supplement company; nor did Plaintiff ever authorize Defendants to charge any such accounts in her name or run up any debs to such companies in her name. The Agreement between Plaintiff and Defendants provided no such authority to Defendants.

///

3. The Defendants did not return to the Plaintiff her rightfully earned money from her patients for April $28^{th}/29^{th}$ ($2,129.75) and for the entire month of May ($7,830.84) which totals $9,960.59 (this figure represents the Plaintiff's patients' payments minus the fees to be paid to the defendants pursuant to the Agreement). The defendants had also agreed to pay the Plaintiff a percentage of supplement sales which totaled $1,350 for that time period. Plaintiff's money was to be remitted to her bimonthly (every two weeks). The last check Plaintiff received was on 4-30-09. She should have received another check again on 5-15-09 (for April 26th to May 10th), 5-31-09 (for May 10th to May 25th) and on June 15th (for May 25th until I left on May 31st).

4. In mid-May 2009, Plaintiff and her business partner began negotiations to sublease Suite A from the Defendants. During one conversation with the Plaintiff and the Defendant Kent Zimmer when the Plaintiff would not agree to his terms of the lease but negotiated for lease terms more favorable for her, he was particularly upset, and said you can have your terms but then threatened "things are really going to change." When Plaintiff inquired what he meant by that statement he would only reply "you will see, things are really going to change."

5. On May 26, 2009, Plaintiff also paid Defendants $4,047.60 when she purchased for cabinets and desks from Defendants. On May 28, 2009, Plaintiff paid $390.00 for other office accessories (printer/scanner). Plaintiff signed a sublease beginning in June 2009 with the Defendants at which time she paid 1st months rent $3,224.65, and Deposit $3,627.65 to Defendants. Defendants were to remit these amounts to the landlord/owner of the property. The deposit and rent was never given to the landlord but was wrongfully kept by Defendants. Plaintiff then paid at the end of June the rent for July of $3,224.65. Plaintiff's rent was never given to the landlord/owner and was instead wrongfully kept by Defendants. The Plaintiff was to pay the defendants $3,215.07 for medicinary / supplements she purchased from them. It came to

Adversarial Complaint – Page 3

1  the Plaintiffs attention on May 29th that the accounts at the companies from which these

2  supplements had been purchased had been opened by Defendants in her name (unbeknownst to

3  her and without her express or implied consent) and had outstanding balances. The Plaintiff took

4  the money owed to the Defendants ($3627.65) for the purchase of their medicinary / supplements

5  and sent it directly to those companies that had outstanding balances. That amount ($3627.65)

6  only partially covered the balances on those accounts.

7      6.    The Plaintiff was repeatedly assured by the defendants that her payment for

8  patient visits and supplement sales in April/May would be forthcoming. Defendants did

9  knowingly and willfully misrepresent to Plaintiff that she would receive the income that was

10 owed to her and which her patients had remitted to Defendants' receptionist for their medical

11 care.

12     7.    After numerous requests, Plaintiff realized that Defendants had no intention of

13 remitting to her the patient fees that they had collected on her behalf. On July 15, 2009, through

14 email correspondence, Plaintiff learned of the Defendants intention to file bankruptcy.

15 Defendants' filed for bankruptcy on or about August 25, 2009.

16     8.    Through phone conversation and email the defendant Stacie Zimmer stated that

17 the Plaintiff would not be included in their bankruptcy but they would instead establish a

18 payment plan. Plaintiff relied on Ms. Zimmer's representations that she would eventually be

19 paid. The defendant later retracted this promise.

20     9.    Plaintiff also learned that she would not be receiving her deposit of $3,627.65

21 back from the defendants which she had paid them at the beginning of June. That deposit had

22 never been remitted to the landlord/owner of the property – defendants wrongfully kept those

23 monies.

24     ///

10. On 8/20/09 the Plaintiff signed a new lease for suite A directly with the property owners/landlord. The Plaintiff was required to pay a new deposit for suite A as any deposits the Defendants paid had been forfeited due to outstanding rent and money owed on a private loan Defendants had with the owner/landlord.

11. Plaintiff had been assured on several occasions by the defendants that her deposit was safe with the owner/landlord of the property. Plaintiff learned that her deposit had never actually been given to the owner/landlord and was instead misappropriated by Defendants.

12. Plaintiff met with the Defendant Stacie Zimmer on September 30th at the Starbucks on 17th Street in Costa Mesa to discuss with the defendant the possibility of reaffirmation. Defendants stated that the money Plaintiff paid to the supplement companies to pay down the outstanding balances that had been opened on credit lines in Plaintiff's name was money they intended Plaintiff to "have" as part of her patient remittances. Defendants' rationale made no sense and ignored Defendants' willful and inappropriate opening of accounts in Plaintiff's names without her consent with supplement companies.

13. On October 5, 2009, Plaintiff attended the Defendants meeting of creditors on at the United States Bankruptcy Court. At that time Defendant Kent Zimmer declared under oath they had not received any money/assets from the dissolution of their company. Plaintiff knows this to be an untrue statement as Plaintiff had personally paid defendants $4,437.60 for assets (cabinets, desks & scanner) that came from the Defendant's company at the time of dissolution. Plaintiff is also aware that the business owner in 1831 Orange Ave Ste B paid money to the Defendants for business assets as she purchased their business "Serenity Wellness" and changed the name to "Embrace Health" after discovering the significant problems with the business she had purchased.

///

14. In total the Defendants owe the Plaintiff $14,938.24 ($9,960.59 in patient fees they collected on the Plaintiffs behalf; $1350.00 for supplement percentage; and $3,527.65 for security deposit for suite A). This debt is not dischargeable to Plaintiff as a creditor for the reasons articulated in the below Claims.

### CLAIM 1 -- Section 523(a)(2)(A) – fraud/misrepresentation.

### Against all defendants

15. Plaintiff realleges and incorporates by reference paragraphs 1 through 14, herein.

16. Defendants knowingly made false statements on multiple occasions with the intent to deceive the plaintiff. First, when the plaintiff questioned the defendants about her April and May patient and supplement money owed to her, the defendants stated "it will be coming shortly". On the day the plaintiff subleased office space from the defendants, the plaintiff again questioned the defendants about April and May's patient and supplement fees. Once again, the defendants stated "Koren, we will get it to you shortly". In mid-July when the plaintiff again questioned the defendants about the revenue owed to the plaintiff. The defendant's stated "Even though we claimed bankruptcy, we still plan on paying you for all the money we owe you." Statements such as these occurred multiple times via email and phone conversations.

17. Because the defendants said the revenues would be coming to the plaintiff on multiple occasions, the plaintiff relied on those statements. As a result of her reliance, Plaintiff paid the defendants additional monies for the rent sublease of the office space, deposits and business assets. Plaintiff would never have given additional money to defendants if defendants had not verbally promised "the money will be coming shortly." Plaintiff relied on their statements. In addition, there had been multiple times in the past, when the defendants were late in revenue payment, and told the plaintiff "the money would be coming shortly" and it did.

Adversarial Complaint – Page 6

18. Defendants had known at the time Plaintiff had paid them money for rent/deposits they would not be paying the money from patient visits for April/May as is evidenced by Paragraph 12 when Defendant Stacie Zimmer admitted they knowingly did not have enough money to pay the Plaintiff for her patient visits (as it had been spent elsewhere) by stating they were reliant on the funds the Plaintiff would have paid the Defendants for their left over supplement inventory to in turn pay her for money owed from patient visits and supplement sales in April/May.

19. Damages suffered as a result of Plaintiff's reliance total $14,938.24. Plaintiff would not have paid two months rent, security deposit and business assets (see Paragraph 14) had the defendants been honest about their intentions.

20. Defendant Kent Zimmer has shown a history of deceit as evidenced by the defendant perjuring himself at his meeting of creditors (see Paragraph 13)

## CLAIM 2 -- Section 523(a)(4) – Embezzlement.

### Against all defendants

21. Plaintiff realleges and incorporates by reference paragraphs 1 through 14, herein.

22. Property in the form of patient remittances to Plaintiff, was remitted to defendants and held by defendants pursuant to the Agreement. The patient remittances were not the rightful property of defendants. Plaintiff had placed defendants in a position of trust to collect and hold the remittances, and expected that defendants would issue the remittances to Plaintiff.

23. Defendants misappropriated those funds collected on Plaintiff's behalf (patient remittances) and spent them elsewhere (see paragraph 12) when they were to be remitted to Plaintiff for patient fees collected.

24. Plaintiff was repeatedly reassured that her patient remittances would be forthcoming. Defendants had no intention of turning over to Plaintiff the patient remittances they had collected.

25. Defendants acts were willful and without justification.

### CLAIM 3 -- Section 523(a)(6) – Willful and malicious injury.
### Against all defendants

26. Plaintiff realleges and incorporates by reference paragraphs 1 through 14, herein.

### Count I.

27. As described in Paragraph 4, herein, Defendant Kent Zimmer intended to and did continue collecting money from Plaintiff and not remitting to Plaintiff money owed to her. There is also clear evidence that the Defendants continued to collect money from Plaintiff for rent, deposits and assets purchased from the plaintiff from their business. At the same time, Defendants retained and had no intention of paying Plaintiff the patient remittances received or the percentage Plaintiff was owed by her supplement sales during April and May. Defendants proceeded to keep these monies, reassuring Plaintiff that her money in the form of patient remittances and supplement sales percentages would be forthcoming. Defendants' representations were knowingly false and intended to induce Plaintiff to continue remitting money to Defendants and to continue allowing her patients to remit money to defendants.

28. Plaintiff relied on Defendants' statements that she would be receiving her money from April and May sales and patient visits and she continued to pay Defendants money for rent of the sublease of suite A.

29. Defendants acts were willful, injurious and malicious and were intended to cause injury to Plaintiff. Defendants' acts were without excuse or justification and caused injury in fact

Adversarial Complaint – Page 8

1   to Plaintiff by depriving Plaintiff of income and profits she was entitled to. Defendants violated

2   Plaintiff's trust and the Agreement.

## Count II.

4   30.   Defendants opened accounts with supplement companies in Plaintiff's name,

5   without Plaintiff's authorization or knowledge. Defendants then ran up balances in Plaintiff's

6   name which Plaintiff was forced to discharge so that her credit rating and reputation would not

7   be impaired. Plaintiff in no way authorized this activity by Defendants and did not derive a

8   benefit from this activity.

9   31.   Defendants actions were willful, injurious and malicious. Opening an account

10  with a company in another person's name, without person's consent is a wrongful act. Running

11  up debt in another person's name is also a wrongful act. Both actions are intentional and

12  injurious.

13  30.   Defendants' actions caused injury in fact to Plaintiff. Plaintiff paid monies to the

14  supplement companies so that her credit and reputation would not be ruined. If Plaintiff had

15  been apprised of this activity, she would not have paid Defendants more money for the rent on

16  the sublease, deposit and business assets purchased from their business. Further, if she had

17  known that accounts were to be opened in her name, she would have put an end to such activities

18  and would not have allowed Defendants to incur yet more debt in Plaintiff's name. These actions

19  of Defendant were conducted without just cause as Plaintiff had done no harm to the defendants.

20  Defendants actions were certain to and did in fact cause injury to Plaintiff by causing her to incur

21  costs and expenses due to Defendants' wrongful activities.

22  ///

23  ///

24  ///

## RELIEF REQUESTED

31. Plaintiff requests that the debt owed her by the Defendants not be discharged in this bankruptcy proceeding. This debt is not dischargeable due to the willful, intentional and injurious nature that it was incurred.

32. Plaintiff also requests all other relief the court sees fit to grant as justice requires.

DATED this 15 day of April, 2010.

By *Koren Barrett, N.D.*

Koren Barrett, N.D., *appearing pro se*

Adversarial Complaint – Page 10

Summons and Notice of Status Conference - *Page 2*          F 7004-1

| In re<br>Koren Burrett<br>Debtor. | CHAPTER 7<br>8:09-18916-ES<br>CASE NUMBER 8:09-01774-ES |
|---|---|

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ___Orange___

1. I am employed in the County of ___Orange___, State of California. I am over the age of 18 and not a party to the within action. My business address is as follows:

2. ☑ **Regular Mail Service:** On ___4/15/10___, I served the foregoing Summons and Notice of Status Conference (and any instructions attached thereto), together with the Complaint filed in this proceeding, on the Defendant(s) at the following address(es) by placing a true and correct copy thereof in a sealed envelope with postage thereon fully prepaid in the United States Mail at ___Costa Mesa___, California, addressed as set forth below.

3. ☐ **Personal Service:** On _____, personal service of the foregoing Summons and Notice of Status Conference (and any instructions attached thereto), together with the Complaint filed in this proceeding, was made on the Defendant(s) at the address(es) set forth below.

4. Defendant(s) and address(es) upon which service was made:

   Daniel Leibowitz
   Attorney for Kent & Stacy Zimmer
   4050 Katella Ste. 201
   Los Alamitos, CA 90720

☐ Names and Addresses continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.
Dated:

___Mallory Anderson___                    ___/s/ Mallory Anderson___
Type Name                                   Signature

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Revised December 1998 (COA-SA)                                   F 7004-1

Summons and Notice of Status Conference - *Page 2*    **F 7004-1**

| In re | CHAPTER 7 |
|---|---|
| Koren Barrett | 8:09-18916-ES |
| Debtor. | CASE NUMBER 8:09-01774-ES |

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ___Orange___

1. I am employed in the County of ___Orange___, State of California. I am over the age of 18 and not a party to the within action. My business address is as follows:

2. ☑ **Regular Mail Service:** On ___4/15/10___, I served the foregoing Summons and Notice of Status Conference (and any instructions attached thereto), together with the Complaint filed in this proceeding, on the Defendant(s) at the following address(es) by placing a true and correct copy thereof in a sealed envelope with postage thereon fully prepaid in the United States Mail at ___Costa Mesa___, California, addressed as set forth below.

3. ☐ **Personal Service:** On _____, personal service of the foregoing Summons and Notice of Status Conference (and any instructions attached thereto), together with the Complaint filed in this proceeding, was made on the Defendant(s) at the address(es) set forth below.

4. Defendant(s) and address(es) upon which service was made:

   Judge Erithe A Smith
   411 West 4th St. Ste 2030
   Santa Ana, CA 92701-4593

☐ Names and Addresses continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.
Dated:

___Mallory Anderson___
Type Name

___[signature]___
Signature

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*Revised December 1998 (COA-SA)*    **F 7004-1**